IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SYED ZAHID ISHAQ, | * |
| Plaintiff, | * |
| v. | *  Civil No. 8:24-cv-00207-TJS |
| ANDREW SCHOFER, *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \*

**MEMORANDUM OPINION**

Pending before the Court is the Motion to Dismiss, or in the Alternative, Motion for Summary Judgment ("Motion") (ECF No. 8) filed by Defendants Andrew Schofer and Antony Blinken (collectively, "Defendants").[1] Having considered submissions of the parties (ECF Nos. 8, 10, 11, 13, & 14), the Court finds that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, the Motion will be granted.

**I.     Background**

   **A.  Factual History**

The following facts are derived from the Complaint, filed by Syed Zahid Ishaq ("Mr. Ishaq") (ECF No. 1) and are taken as true for purposes of evaluating the Defendants' Motion. Mr. Ishaq is a United States citizen living in Maryland. *See* ECF No. 1 at ¶ 1. In March 2022, Mr. Ishaq filed a Form I-130 visa petition with the United States Citizenship and Immigration Services ("USCIS") on behalf of his wife, Qurat Ul Ain ("Ms. Ul Ain"), which USCIS approved the

---

[1] In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have the undersigned conduct all further proceedings in this case, including trial and entry of final judgment, and conduct all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals if an appeal is filed. ECF No. 5.

1

following month. *See id.* at ¶¶ 5, 16-17. In July 2023, a consular officer at the United States Embassy in Pakistan interviewed Ms. Ul Ain. *See id.* at ¶ 19. The consular officer issued a "refusal" of Ms. Ul Ain's visa application under INA § 221(g). *See id.* at ¶¶ 20-21; *see* 8 U.S.C. § 1201(g) (INA § 221(g) codified). After the interview, Ms. Ul Ain was provided with instructions on how to download and submit a supplemental question form, which she completed and submitted. *See* ECF No. 8, Ex. 1 at ¶¶ 9-10. Despite numerous inquiries as to the status of Ms. Ul Ain's visa application, Mr. Ishaq and Ms. Ul Ain have received no meaningful response. *See* ECF No. 8 at ¶ 22. Mr. Ishaq and his wife have experienced emotional hardship due to the delay, as they reside in separate countries. *Id.* at ¶ 10. Mr. Ishaq has diabetes and glaucoma, for which he requires eye surgery, but has canceled three surgeries because he needs his wife's support for postoperative care. *Id.* Ms. Ul Ain lives alone in Pakistan and the local crime makes her feel unsafe, causing depression and anxiety. *Id.* The ten-hour time difference makes communication difficult and affects Mr. Ishaq's ability to sleep and focus on work. *Id.* at ¶ 11. Mr. Ishaq is also experiencing financial difficulty maintaining his own household and his wife's expenses, in addition to travel expenses to visit his wife. *Id.* at ¶ 12.

Mr. Ishaq brought this lawsuit to compel action on Ms. Ul Ain's visa application. He alleges that USCIS unreasonably delayed processing the application in violation of the Administrative Procedure Act, 5 U.S.C. § 706(1) ("APA"), the Mandamus Act, 28 U.S.C. §§ 1361, 1651, and the Fifth Amendment of the United States Constitution. *Id.* at ¶¶ 23-39. Defendants move to dismiss Plaintiff's claims, arguing that the Court lacks subject matter jurisdiction and that the Complaint fails to state a claim upon which relief can be granted. ECF No. 8. The Motion is ripe for decision.

### B. I-130 Visas

Under the Immigrant and Nationality Act ("INA"), certain relatives of United States citizens can petition for immigrant visas. *See Begum v. United States Dep't of State*, No. JMC-22-00478, 2022 WL 16575703, at *1 (D. Md. Oct. 31, 2022); *see also* 8 U.S.C. § 1101 *et seq.* "To obtain permanent resident status for qualifying foreign relatives under the INA, a U.S. citizen must submit Form I-130 ('Petition for Alien Relative') to U.S. Customs and Immigration Services ('USCIS')." *Id.* (quoting *Nusrat v. Blinken*, No. TJK-21-2801, 2022 WL 4103860, at *1 (D.D.C Sep. 8, 2022) (citing 8 U.S.C. § 1154; 8 C.F.R. § 204(1)(a)(1))); *see also* 8 U.S.C. § 1151(b)(2)(A)(i) (defining an "immediate relative[ ]" to include "spouses" for purposes of Form I-130 petitioners). If USCIS approves the petition, it is forwarded to the Department of State's National Visa Center ("NVC"). *See Begum*, 2022 WL 16575703, at *1. NVC then collects required documents and fees from the noncitizen beneficiary. *Id.* Once NVC verifies the noncitizen beneficiary has submitted the documentation and paid the fees, they are "documentarily qualified," and the visa case is transferred to the relevant United States Embassy or Consulate to be scheduled for an interview. *See Immigrant Visa*, U.S. Dep't of State, Bureau of Consular Affairs, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition.html (last visited August 6, 2024); *National Visa Center*, U.S. Dep't of State, Bureau of Consular Affairs, https://travel.state.gov/content/dam/visas/PDF-other/NVC_role_in_IVs_for_applicants_November_2016.pdf (last visited August 6, 2024). The applicant has the burden to "establish that he [or she] is eligible to receive such visa." 8 U.S.C. § 1361; *see also* 22 C.F.R. § 40.6. After the interview, the consular officer must either "issue the visa, refuse the visa . . . or . . . discontinue granting the visa." 22 C.F.R. § 42.81(a); *see also Begum*,

2022 WL 16575703, at *1 (citing *Ghadami v. U.S. Dep't of Homeland Sec.*, No. ABJ-19-397, 2020 WL 1308376, at *1 (D.D.C. Mar. 19, 2020)).

## II. Discussion

### A. Legal Standard

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *Richardson v. Mayor & City Council of Baltimore*, No. RDB-13-1924, 2014 WL 60211, at *2 (D. Md. Jan. 7, 2014). Generally, "questions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.'" *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (quoting 2 James Wm. Moore, *et al.*, *Moore's Federal Practice* § 12.30[1] (3d ed. 1998)). The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in federal court. *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). In a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647. There are two ways to present a 12(b)(1) motion to dismiss. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "A defendant may either contend (1) that the complaint fails to allege facts upon which subject matter jurisdiction can be based; or (2) that the jurisdictional facts alleged in the complaint are untrue." *Id.* The court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768.

Rule 12(b)(6) permits a court to dismiss a complaint if it fails to "state a claim upon which relief can be granted." "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a

complaint, [and not to] resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotation marks omitted). A complaint must consist of "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). When considering a motion to dismiss, a court must accept as true the well-pled allegations of the complaint and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). While a court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint generally "does not need detailed factual allegations." *Id.* So long as the factual allegations are "enough to raise a right to relief above the speculative level," the complaint will be deemed sufficient. *Id.* A "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

### B. Lack of Jurisdiction

Defendants argue that the Court lacks subject matter jurisdiction over Mr. Ishaq's claims under the Mandamus Act and the APA because Defendants do not have a clear nondiscretionary duty to act. Under the Mandamus Act, district courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The extraordinary remedy of mandamus should be issued "only if [the plaintiff] has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). The party seeking mandamus relief bears the heavy burden to show that (1) the petitioner has a clear right to the relief sought; (2) the respondent has a clear duty to do the particular act requested by the petitioner; and (3) no other adequate remedy is available. *See Asare v. Ferro*, 999 F. Supp. 657, 659 (D. Md. 1998); *In re Beard*, 811 F.2d 818, 826 (4th Cir. 1987). "The failure to show any of these prerequisites defeats a district court's jurisdiction under 28 U.S.C. § 1361." *Smith v. Cummings*, No. PJM-10-1891, 2010 WL 2925880, at *1 (D. Md. July 22, 2010). Mandamus can be used only to compel ministerial acts of federal government officers, not discretionary duties. *Asare*, 999 F. Supp. at 659; *see also Meyers v. U.S. Dist. Ct. for Dist. of Maryland Baltimore Div.*, No. DKC-23-3015, 2024 WL 493268, at *2 (D. Md. Feb. 8, 2024) ("A ministerial act is one in which the law prescribes and defines a duty to be performed with such precision as to leave nothing to the exercise of discretion or judgment."). The central question is "whether the agency's delay is so egregious as to warrant mandamus." *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984).

Similarly, the APA permits courts to compel an agency action if it is "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *Gonzalez v. Cuccinelli*, 985 F.3d 357, 365 (4th Cir.

6

Jan. 14, 2021). To state a cause of action for unreasonable delay under the APA, a party must point to a specific provision within the APA authorizing judicial review of the relevant agency's action. *See NAACP v. Bureau of the Census*, 945 F.3d 183, 191 (4th Cir. 2019). Absent such a provision, courts lack jurisdiction to review agency actions. *Id.* (finding that failure to identify agency actions eligible for judicial review under the APA is a "jurisdictional defect"). Under § 701(a) of the APA, judicial review is precluded if the agency action is discretionary. 5 U.S.C. § 701(a); *Noumbissie v. Garland*, No. RDB-22-3357, 2023 WL 8600510, at *2 (D. Md. Nov. 1, 2023). "[W]here an agency is *not required* to do something, [a court] cannot compel the agency to act—let alone to act faster." *Gonzalez*, 985 F.3d at 366 (*citing Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 n.1 (2004)). Notably, "[t]he standard by which a court reviews . . . agency inaction is the same under both § 706(1) of the APA and the Mandamus Act[.]" *Jahangiri v. Blinken*, No. DKC-23-2722, 2024 WL 1656269, at *14 (D. Md. Apr. 17, 2024) (internal quotations omitted); *Logan v. Blinken*, No. FYP-21-2275, 2022 WL 3715798, at *4 (D.D.C. Aug. 29, 2022) ("Because the standard for undue delay under the Mandamus Act is identical to the APA standard, the Court treats the two claims as one." (internal quotations omitted)).

Mr. Ishaq cannot prevail under the Mandamus Act or the APA because Defendants do not owe him a clear statutory duty to adjudicate his wife's visa application within a specific time frame. Mr. Ishaq cites four statutory provisions, none of which create a clear duty for Defendants.

Under 8 U.S.C. § 1202(b), "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). Rather than create a nondiscretionary duty, read in context, "this sentence cabins the State Department's discretion as to who may review and adjudicate immigrant visa applications; it does not mandate that all applications actually be adjudicated." *Ali v. United States Dep't of State*, 676 F. Supp. 3d 460, 469 (E.D.N.C. 2023)

(quoting *Babamuradova v. Blinken*, No. 22-1460, 633 F.Supp.3d 1, 15 (D.D.C. Sept. 27, 2022)). Courts allowing challenges to the State Department visa adjudication schemes have been those where "Congress supplied a statutory deadline for adjudication, and the Secretary's prioritization scheme ignored that limit or otherwise rested on misinterpretations of law." *Ali*, 676 F. Supp. 3d at 470 (quoting *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 88 (D.D.C. 2022)). Mr. Ishaq cites *Gomez v. Biden* in support of his claim that § 1202(b) provides a clear nondiscretionary duty. *See* ECF No. 10 at 13. In *Gomez*, a group of diversity visa[2] applicants brought suit because a COVID-related policy halted adjudication of any diversity visas before the end of the fiscal year. *See Gomez v. Biden*, No. APM-20-01419, 2021 WL 3663535, at *1, *17 (D.D.C. Aug. 17, 2021). Some courts, like in *Gomez*, have concluded that § 1202(b) imposes a clear nondiscretionary duty where there were "challenges to COVID-related policies that suspended the issuance of diversity visas outright." *Khamrabaeva v. Blinken*, No. RC-22-1219, 2022 WL 4446387, at *5 (D.D.C. Sept. 24, 2022). However, *Gomez* is inapposite because in cases where "plaintiffs challenged only the delay in adjudicating their particular applications," as here, courts have found that § 1202(b) does not impose a duty to act. *Id.* (collecting cases). "Thus, the distinction between a duty to adjudicate any visa applications and a duty to adjudicate a particular visa application is a significant one." *Mueller v. Blinken*, 682 F. Supp. 3d 528, 535 n. 3 (E.D. Va. 2023). Ms. Ul Ain's visa petition is individual and there is no statutory timeline at issue here.

Mr. Ishaq also argues that the plain language of § 1202(b) mandates that Defendants adjudicate his wife's visa application. *See* ECF No. 10 at 12-13. He cites *Iqbal v. Blinken*, an out-

---

[2] A diversity visa is allocated through a program where "[u]p to 55,000 immigrants can enter the United States each year from countries with low rates of immigration to the United States." *Diversity Visa Instructions*, U.S. Dep't of State, Bureau of Consular Affairs, https://travel.state.gov/content/travel/en/us-visas/immigrate/diversity-visa-program-entry/diversity-visa-instructions.html (last visited Aug. 6, 2024).

of-district case finding that "the use of the word 'shall' [in § 1202(b)] indicates a mandatory nondiscretionary duty to review and adjudicate immigrant visa applications." *Iqbal v. Blinken*, No. KJM-KJN-223-01299, 2023 WL 7418353, at *6 (E.D. Cal. Nov. 9, 2023). While courts appear to be split on the issue of whether there is a mandatory duty to adjudicate immigrant visas, courts within the Fourth Circuit have recently held that there is no clear, nondiscretionary duty for the Department of State to act on a plaintiff's visa request. *Mueller*, 682 F. Supp. 3d at 535 ("To hold that the government must review and adjudicate all visa applications 'would truly be the proverbial elephant in a mousehole.'") (citing *Zarei v. Blinken*, No. 21-2102, 2021 WL 9146060, at *1 (D.D.C. Sept. 30, 2021)); *Mohamed v. United States Dep't of State*, No. ADC-23-1857, 2024 WL 2805290, at *3 (D. Md. May 31, 2024) (citing *Mueller*, 682 F. Supp.3d at 534); *Ali*, 676 F. Supp. 3d at 466, 470 (holding that neither 8 U.S.C. § 1202(b) or 5 U.S.C. § 555(b) "create[d] specific, nondiscretionary duties" to support Mandamus Act and APA claims seeking an order compelling the Department to schedule a visa interview); *see also Khamrabaeva*, 2022 WL 4446387, at *6. The Court will follow the approach of other courts in the Fourth Circuit.

Next, 8 U.S.C. § 1153(a) provides that visas "shall" be issued to immediate relatives of qualified immigrant petitioners. This provision merely identifies the statutory visa allocation for different family-sponsored visas. *See Mueller*, 682 F. Supp. 3d at 535-36. Defendants correctly assert that it does not mandate that the State Department or a consular officer must adjudicate visa applications. *See* ECF No. 8 at 10. Neither § 1202(b) nor § 1153(a) provide a clear nondiscretionary duty to Defendants.

Mr. Ishaq's reliance on 5 U.S.C. § 555(b) is similarly misplaced. This section provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C.

§ 555(b). Mr. Ishaq argues that this provision requires Defendants to adjudicate his wife's visa petition "within a reasonable time." *See* ECF No. 10 at 14. However, as with § 1202(b), there is no specific time period laid out in the statute and "the general directive of Section 555(b) is a far cry from the 'discrete agency action' that courts require when issuing an order compelling agency action "unlawfully withheld or unreasonably delayed." *Hi-Tech Pharmacal Co. v. U.S. Food & Drug Admin.*, 587 F. Supp. 2d 1, 9 (D.D.C. 2008).

Lastly, 22 C.F.R. § 42.21(a) does not create a duty to adjudicate visa petitions. It states that "[a]n immediate relative [of a U.S. citizen] shall be documented as such unless the U.S. citizen refuses to file the required petition." 22 C.F.R. § 42.21(a). This merely requires that Ms. Ul Ain be documented as an immediate relative of Mr. Ishaq.

None of the statutory provisions relied upon by Mr. Ishaq create a clear nondiscretionary duty for Defendants to act. *See Polfliet v. Cuccinelli*, 955 F.3d 377, 382 (4th Cir. 2020) ("A statute need not literally contain the word 'discretion' in order to 'specify' discretion"). Accordingly, the Court lacks subject matter jurisdiction over Mr. Ishaq's claims under the Mandamus Act and the APA. The Motion is granted as to those claims.[3]

### C. Failure to State a Claim

#### 1. Unreasonable Delay

Alternatively, even if Mr. Ishaq had established that Defendants have a clear nondiscretionary duty to act on Ms. Ul Ain's visa petition, Mr. Ishaq still fails to state a claim because adjudication of the visa petition is not "unreasonably delayed" under the APA. The APA provides that agencies, "within a reasonable time, . . . shall proceed to conclude a matter presented

---

[3] Because the Court lacks subject-matter jurisdiction, it does not need to reach the issue of nonreviewability.

to it." 5 U.S.C. § 555(b). A plaintiff states an APA claim under 5 U.S.C. § 706(1) by "assert[ing] that an agency failed to take a discrete agency action that it is required to take." *Norton*, 542 U.S. at 55. In that situation, the APA authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed . . . ." 5 U.S.C. § 706(1). To grant such relief, the Court has to find the delay is unreasonable, a determination which is analyzed under the six-factor test set forth in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"). *See South Carolina v. United States*, 907 F.3d 742, 759 (4th Cir. 2018) ("The *TRAC* factors weigh, inter alia, the interests at stake and the effect of expediting the delayed agency action"). There is no *per se* rule on how long a delay is unreasonable. *See Begum*, 2022 WL 16575703, at *5. The *TRAC* factors are used only when there is a challenge of an agency decision being "unreasonably delayed." *Id.* The factors are:

> (1) the time agencies take to make decisions must be governed by a "rule of reason;" (2) where Congress has provided a timetable [it] may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (internal citations omitted).

Mr. Ishaq contends that "there is insufficient evidence at the motion to dismiss stage for a Court to rationally use TRAC analysis." ECF No. 10 at 21. But Defendants correctly note that other courts in this district have applied the *TRAC* factors to pre-discovery motions to dismiss, including in cases involving the same visa category as in this case. *See* ECF No. 11 at 9-10; *Begum*, 2022 WL 16575703, at *1-2 (applying *TRAC* factors to an I-130 visa), *5-10; *Dennis v. Blinken*, No. JRR-22-02522, 2023 WL 4764576, at *5 (D. Md. July 26, 2023) (same); *Jahangiri*, 2024 WL

1656269, at *7 (applying *TRAC* factors to a fiancé K-1 visa); *see also Isse v. Whitman*, No. BAH-22-3114, 2023 WL 4174357, at *6 (D.D.C. June 26, 2023) ("[C]ourts in this circuit have employed the TRAC factors at the motion to dismiss stage"). It is appropriate to analyze Mr. Ishaq's claim of unreasonable delay using the *TRAC* factors.

The first two *TRAC* factors weigh in Defendants' favor. "Courts generally consider the first and second *TRAC* factors together." *Jahangiri*, 2024 WL 1656269, at *8. "There is no statutory or regulatory timeline that provides a 'rule of reason' to govern the State Department's adjudication of a visa application." *Dennis*, 2023 WL 4764576, at *5 (quoting *Ahmed*, 2022 WL 424967, at *5). "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017). "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. BAH-20-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). Generally, courts have found that "immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Begum*, 2022 WL 16575703, at *6 (quoting *Sarlak*, 2020 WL 3082018, at *6). "The proper method for calculating delay [] is the length of time between the last action the government took on a visa application and the filing of plaintiff's complaint." *Barazandeh v. U.S. Dep't of State*, No. BAH-23-1581, 2024 WL 341166, at *7 n. 7 (D.D.C. Jan. 30, 2024).

Mr. Ishaq filed the I-130 visa petition on behalf of Ms. Ul Ain in March 2022, over two years ago. *See* ECF No. 1 at ¶ 16. The consular officer refused Ms. Ul Ain's visa petition in July 2023, about one year ago. ECF No. 1 at ¶ 19. Since then, the government has taken no action and the petition has remained in administrative processing. As of now, the delay is approximately one year. This amount of time is not unreasonable as compared to other visa delay cases. *See Dennis,*

2023 WL 4764576, at *7 (20 months not unreasonable delay before interview); *Begum*, 2022 WL 16575703, at *7 (33-month delay not unreasonable delay before interview); *Nusrat*, 2022 WL 4103860, at *6 (collecting cases where 29-33-month delays were not unreasonable); *Isse*, 2023 WL 4174357, at *6 (40 months not unreasonable delay after interview); *Arab v. Blinken*, 600 F. Supp. 3d 59, 70 (D.D.C. 2022) (30 months not unreasonable delay after interview); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 175 (D.D.C. 2020) (two years not unreasonable delay after interview).

The third and fifth factors favor Mr. Ishaq. As alleged in the Complaint, Mr. Ishaq and his wife's health and welfare are at impacted by the delay in adjudicating Ms. Ul Ain's visa petition. Mr. Ishaq and Ms. Ul Ain claim to have experienced mental and physical health issues, and their ability to make long-term family plans is curtailed. *See* ECF No. 1 at ¶¶ 10-11. This Court "takes seriously the harm that separation imposes on a family." *Begum*, 2022 WL 16575703, at *7 (quoting *Nusrat*, 2022 WL 4103860, at *7). These factors weigh in favor of Mr. Ishaq.

Under the fourth factor, "[c]ourt intervention is often unwarranted when a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Begum*, 2022 WL 16575703, at *8 (internal quotations omitted). Expediting Ms. Ul Ain's visa application would simply reorder the queue of those waiting for visa adjudication. This factor weighs in favor of Defendants.

Finally, under the sixth factor, Mr. Ishaq has alleged no impropriety on the part of Defendants. This factor simply "reminds courts that they need not find any impropriety to hold that agency action is unreasonably delayed." *Dennis*, 2023 WL 4764576, at *9 (internal citations omitted). This factor is neutral. *See Begum*, 2022 WL 16575703, at *9 (finding sixth factor neutral because the plaintiff has not alleged bad faith).

In sum, factors one, two, and four favor Defendants, factors three and five favor Plaintiffs, and factor six is neutral. A court can assess the *TRAC* factors when deciding a motion to dismiss claims alleging unreasonable delay of agency action "if the 'record contains enough facts to evaluate [them]' at this stage." *Jahangiri*, 2024 WL 1656269, at *12 (citation omitted). Considering the *TRAC* factors, the Court concludes Mr. Ishaq has failed to allege sufficient facts to state a claim that his wife's application has been unreasonably delayed under the APA. Accordingly, the Motion is granted on this alternative ground.

### 2. Due Process

Mr. Ishaq asserts that, as a U.S. citizen, he has "a statutorily created entitlement to adjudication of his wife's visa application," and the delay "constitutes a deprivation of [his] protected interest without due process." ECF No. 1 at ¶ 37. The Fifth Amendment guarantees that "no person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "To state a violation of due process, a plaintiff must allege a deprivation of her life, liberty, or property by the government." *Begum*, 2022 WL 16575703, at *9 (quoting *Alshawy v. U.S. Citizenship & Immigr. Servs.*, No. FYP-21-2206, 2022 WL 970883, at *8 (D.D.C. Mar. 30, 2022)). "If the Court determines that the plaintiff was not denied an interest in [his] life, liberty, or property, then [his] claim must be dismissed." *Id.*

Mr. Ishaq alleges that Defendants violated his "substantive and procedural due process rights." ECF No. 1 at ¶ 39. But Defendants correctly state that there is generally no liberty or property interest in prospective government benefits. *See* ECF No. 1 at 22. "[T]here is no property right in an immigrant visa, nor do noncitizens have a constitutionally-protected interest in the procedures by which visas are obtained." *Mahmood v. U.S. Dep't of Homeland Sec.*, No. RC-21-1262, 2021 WL 5998385, at *9 (D.D.C. Dec. 20, 2021) (internal quotations and citations omitted).

Because the delay in adjudicating the visa petition does not deprive Mr. Ishaq of life, liberty, or property, his due process rights have not been violated. *Kerry v. Din*, 576 U.S. 86, 90, (2015); *see also Muñoz*, 144 S. Ct. at 1820-26 (holding that "a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country" and that "citizens [do not] have procedural due process rights in the visa proceedings of others"). And while Mr. Ishaq "enjoys a liberty interest in [his] personal choice in matters of marriage and family life," that interest is not implicated in the facts he alleged in his Complaint as he is already married to Ms. Ul Ain. *Begum*, 2022 WL 16575703, at *10.

For these reasons, Mr. Ishaq's due process claim fails, and the Motion will be granted as to this claim.

### III.   Conclusion

For the reasons set forth above, Defendant's Motion (ECF No. 8) is **GRANTED,** and this case is **DISMISSED WITHOUT PREJUDICE**.


Date: August 8, 2024                                        /s/
                                                   Timothy J. Sullivan
                                                   Chief United States Magistrate Judge